IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

No. 7:08-CV-185-H(2)

| | |
|---|---|
| JESSE NIETO, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| COLONEL RICHARD FLATAU, JR., USMC, in his official capacity as Commanding Officer, Marine Corps Base, Camp Lejeune, North Carolina; and LIEUTENANT COLONEL JAMES HESSEN, USMC, in his official capacity as Base Magistrate/Traffic Court Officer, Marine Corps Base, Camp Lejeune, North Carolina, | ) ) ) ) ) ) ) ) ) ) **ORDER** |
| Defendants. | ) ) |

This matter is before the court on plaintiff's motion for summary judgment [DE #19] and defendants' motion to dismiss or for summary judgment [DE #20]. Appropriate responses and replies have been filed, and the time for further filings has expired. This matter is ripe for adjudication.

### STATEMENT OF THE CASE

Plaintiff filed this action for declaratory and injunctive relief on November 10, 2008, alleging that defendants, officials of Camp Lejeune Marine Corps Base ("Camp Lejeune" or "Base"),

violated his federal constitutional rights to free speech and equal protection by enforcing a Base regulation to prohibit plaintiff from displaying certain decals on his motor vehicle. Plaintiff seeks to enjoin enforcement of the regulation.

**STATEMENT OF THE FACTS**

Camp Lejuene is a military training facility whose mission is "to maintain combat-ready units for expeditionary deployment." MCB Camp Lejeune - About the Base, http://www.lejeune.usmc.mil/about (last visited Mar. 23, 2010). The Base is situate upon 156,000 acres in eastern North Carolina and, together with the surrounding community of Jacksonville and Onslow County, is home to a population of approximately 150,000 active-duty personnel, dependents, retirees and civilian employees. Id. Defendant Colonel Richard Flatau, Jr., is the Commanding Officer of Camp Lejeune. Defendant Lieutenant Colonel James Hessen is the Base Magistrate and Base Traffic Court Officer.

Plaintiff, Jesse Nieto, retired from the United States Marine Corps in 1985 after having served twenty-five years of active duty and two combat tours as an infantryman in Vietnam. Since 1994, plaintiff has worked as a civilian employee at Camp Lejeune. He uses his privately owned vehicle to commute to and from work on a daily basis.

2

Plaintiff's youngest son, Marc, served in the United States Navy aboard the USS Cole. On October 12, 2000, Marc and sixteen of his shipmates were killed when the USS Cole was bombed by Islamic terrorists.

In 2001, plaintiff began displaying various decals on his vehicle to honor his son and to express his viewpoint regarding Islam and terrorism. These decals include the following: (1) the words "REMEMBER THE COLE, 12 Oct. 2000"; (2) a gold star (symbolizing death in combat); (3) a combat action ribbon; (4) "ISLAM = TERRORISM"; (5) two Marine Corps emblems; (6) the words "WE DIED, THEY REJOICED," with a diagonal line superimposed upon a picture of the Islamic crescent moon and star; (7) a picture of Calvin (from the Calvin and Hobbes cartoon) urinating on a cartoon illustration of the Islamic prophet Muhammad;[1] and (8) a picture of the United States flag with the words "Disgrace My Countries [sic] Flag And I will SHIT On Your Quran" and a diagonal line superimposed upon a picture of a book with "Koran" written on it.

Approximately seven years after plaintiff began displaying these decals, officials at Camp Lejeune received a complaint concerning the decals on plaintiff's vehicle. On July 31, 2008, plaintiff received a visit from Camp Lejeune's Deputy Inspector

---

[1] The Muhammad cartoon depicts the prophet Muhammad with a bomb in his turban and is one of several cartoons that were the subject of controversy in Denmark in 2005.

3

General, Major Louis Maida ("Maida"), who told plaintiff to remove the decals from his vehicle. When plaintiff refused, plaintiff was cited by military police with violation of Base Traffic Regulation BO 5560.2M, Chapter 2, ¶7 ("the regulation"), which prohibits the display of "extremist, indecent, sexist or racist messages on . . . motor vehicles in any format (bumper stickers, window decals, art or other adornments)" on the Base.

On August 1, 2008, plaintiff appeared before the Base traffic court. At that hearing, plaintiff was told to remove three of the decals on his vehicle. Plaintiff was then escorted to his vehicle, at which time plaintiff removed the decal depicting Calvin urinating on Muhammad and the "Disgrace My Countries [sic] Flag And I will SHIT On Your Quran" and "Islam = Terrorism" decals.

Following the hearing, plaintiff added another decal depicting an Islamic crescent moon and star with a diagonal line superimposed upon them and the words "No Quarter" and "Islamic Terrorist." Shortly thereafter, plaintiff was once again cited with violating the regulation and ordered to appear before the traffic court on August 15, 2008.

At the August 15, 2008, hearing, defendant Hessen ordered plaintiff to remove all remaining decals from his vehicle. When plaintiff refused, defendant Hessen issued an order requiring plaintiff to remove his vehicle from Camp Lejeune and all other

4

federal installations until the "offensive stickers are removed from it" and prohibiting plaintiff from bringing any motor vehicle containing "the same or similar offensive stickers" onto the Base or any other federal installation. No action has been taken to rescind Hessen's order; therefore, plaintiff remains subject to the order. Plaintiff asserts that he still desires "to take his vehicle with the decals onto federal installations, including Camp Lejeune, and to continue expressing his political message through the display of the decals." (Pl.'s Mem. Opp'n Defs.' Mot. Dismiss or Summ. J. [DE #22] at 7-8.)

Currently before the court are defendants' motion to dismiss for failure to state a claim upon which relief can be granted and the parties' cross-motions for summary judgment.

## COURT'S DISCUSSION

I. Rule 12(b)(6) Motion to Dismiss

Defendants move for dismissal of plaintiff's claims, arguing the following: (1) that plaintiff has failed to allege that defendants acted with discriminatory purpose as required by Aschroft v. Iqbal, 129 S. Ct. 1937 (2009); (2) that defendants are entitled to qualified immunity from personal liability for damages because their conduct does not violate clearly established law; (3) that plaintiff's claims against defendant Flatau should be dismissed because they are based solely on the theory of respondeat superior; and (4) that dismissal is

5

required because plaintiff has not exhausted his administrative remedies. (Mem. Supp. Defs.' Mot. Dismiss or Summ. J. at 8-13.) Each of these arguments is premised on the theory that plaintiff is suing the defendants for damages under <u>Bivens v. Six Unknown Fed. Narcotics Agents</u>, 403 U.S. 388 (1971) (recognizing an implied cause of action for civil damages against federal officials for violating a citizen's constitutional rights).

In making these arguments, defendants apparently misconstrue the nature of plaintiff's claims. At no point in his complaint does plaintiff assert a claim for damages pursuant to <u>Bivens</u> or otherwise. Nor has he sued either of the defendants in his individual capacity. Instead, plaintiff seeks only declaratory and injunctive relief against the defendants in their official capacities. (<u>See</u> Compl. [DE #1] at 10-11 (praying for declaratory judgment "that Defendants violated the First and Fifth Amendments to the United States Constitution" and injunctive relief prohibiting defendants from enforcing the regulation).) The fact that plaintiff also asks the court to award reasonable attorney's fees, costs and expenses (<u>see</u> Compl. at 11) does not transform this action into one for civil damages. Because no other grounds for dismissal have been raised, defendants' motion to dismiss is DENIED.

6

## II. Summary Judgment Motions

Plaintiff moves for summary judgment arguing, among other things, that Camp Lejeune's regulation prohibiting the display of "extremist, indecent, sexist and racist" vehicle decals violates his free speech rights under the First Amendment. Defendants, on the other hand, contend that the regulation is a reasonable and constitutionally permissible restriction of speech on the military base and has been constitutionally applied. There being no dispute between the parties concerning facts that might affect the outcome of the case, summary judgment is appropriate. Fed. R. Civ. P. 56; Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986).

### A. Forum Analysis

The extent to which speech may be restricted on government property depends on the nature of the relevant forum. Perry Education Ass'n v. Perry Local Educators' Ass'n, 460 U.S. 37 (1983) (nature of forum determines when the government's interest in restricting the use of property to its intended purposes must yield to the rights of those wishing to use the property for expressive activity). In Perry, the Supreme Court adopted a forum analysis that classifies government property into three different forums or categories: (1) traditional public forums, (2) designated public forums, and (3) non-public forums. Perry, 460 U.S. at 45-46.

7

Traditional public forums are places, like streets and parks, that have "immemorially been held in trust for the use of the public, and, time out of mind, have been used for purposes of assembly, communicating thoughts between citizens, and discussing public questions." Hague v. CIO, 307 U.S. 496, 515 (1939). In traditional public forums, restrictions on speech are subject to strict scrutiny and may be enforced by the government only if necessary to serve a compelling state interest and narrowly drawn to achieve that interest. Cornelius v. NAACP Legal Def. & Educ. Fund, 473 U.S. 788, 802 (1985).

A designated public forum exists when the government intentionally opens its property for expressive activity. Perry, 460 U.S. at 44. "[A] public forum may be created by government designation of a place or channel of communication for use by the public at large for assembly and speech, for use by certain speakers, or for the discussion of certain subjects." Cornelius, 473 U.S. at 802. In these forums, speech restrictions are subject to the same strict scrutiny standard applicable to traditional public forums.

The third classification is the non-public forum. A non-public forum is public property that has not traditionally been open for public debate or assembly and has not been designated as such. In a non-public forum, the government may restrict speech as long as the restrictions are reasonable and "not an

8

effort to suppress expression merely because public officials oppose the speaker's view." Perry, 460 U.S. at 46.

In this case, plaintiff contends that Camp Lejeune has created a public forum for speech by allowing individuals to display a variety of political, religious and commercial messages on private vehicles within the Base.[2] Intent is the touchstone in determining whether a public forum has been created. Paulsen v. County of Nassau, 925 F.2d 65, 69 (2d Cir. 1991). "The government does not create a public forum 'by inaction or by permitting limited discourse.'" Gen. Media Commc'ns, Inc. v. Cohen, 131 F.3d 273, 279 (2d Cir. 1997); see also Cornelius, 473 U.S. at 802. However, "[i]ntent is not merely a matter of stated purpose." Paulsen, 925 F.2d at 69. It may be inferred from a number of factors, including policy and practice, the nature of the property, and the property's compatibility or incompatibility with expressive activity. Id.

The business of a military installation, such as Camp Lejeune, is to train our armed forces and to prepare them for

---

[2]Plaintiff points out, for example, that bumper stickers and decals displaying the following have not been banned from Camp Lejeune: confederate flags of all shapes and sizes; a "Darwin" fish that mocks Christianity; silhouettes of naked women; "WHEN YA HAVE 'EM BY THE BALLS THEIR HEARTS AND MINDS WILL FOLLOW"; "YOUR CHILD MAY BE AN HONOR STUDENT BUT YOUR DRIVING SUCKS"; the cartoon character Calvin (from Calvin and Hobbes) urinating on various symbols; endorsements of political candidates; "WHY EXPERIMENT ON ANIMALS WHEN THERE ARE SO MANY DEMOCRATS"; "TERROR ALWAYS THE HARD WAY"; and various logos of college and professional sports teams.

9

war, not to provide a public forum. Greer v. Spock, 424 U.S. 828, 838 (1976). "[T]o accomplish its mission the military must foster instinctive obedience, unity, commitment, and esprit de corps." Goldman v. Weinberger, 475 U.S. 503, 507 (1986), *superseded by statute*, 10 U.S.C. § 744. As a consequence, military bases have almost universally been held to be non-public forums for First Amendment purposes. See, e.g., United States v. Albertini, 472 U.S. 675, 686 (1985) ("Military bases generally are not public fora . . . ."); Spock, 424 U.S. at 838 ("The notion that federal military reservations, like municipal streets and parks, have traditionally served as a place for free public assembly and communication of thoughts by private citizens is . . . historically and constitutionally false."); Ethredge v. Hail, 56 F.3d 1324, 1327 (11th Cir. 1995) (Robins Air Force Base is nonpublic forum); Shopco Dist. Co. v. Commanding Gen. of Camp Lejeune, 885 F.2d 167, 172-73 (4th Cir. 1989) (Camp Lejeune housing areas are non-public forums); but see Flower v. United States, 407 U.S. 197, 198 (1972) (public forum created by military's abandonment of street). It is only where the government has intentionally "'abandoned any . . . claim of special interest in regulating expression'" that the military is said to have created a public forum. Gen. Media, 131 F.3d at 279 (quoting Albertini, 472 U.S. at 685-86).

10

Case 7:08-cv-00185-H   Document 33   Filed 03/31/2010   Page 10 of 16

Camp Lejeune has not abandoned its interests in regulating expression on vehicles entering the Base, as evidenced by the very regulation at issue in this case. While it is true that certain vehicle decals and adornments have been allowed without approval, others are prohibited on the Base. This type of selective access does not transform Camp Lejeune into a public forum. See, e.g., Perry, 460 U.S. 37 (allowing some organizations to use school's internal mail system to distribute materials did not create public forum); Spock, 424 U.S. 828 (military base not converted into public forum simply because certain speakers and entertainers had been invited to appear on base); Shopco, 885 F.2d at 172-73 (allowing door-to-door delivery of civilian enterprise newspaper and other services in base housing area did not create public forum for distribution of advertising circulars). The court, therefore, concludes that Camp Lejeune is a non-public forum for purposes of this action.

B.  Reasonableness & Viewpoint Neutrality Requirements

As a non-public forum, Camp Lejeune may restrict speech on the Base as long as any restrictions are reasonable and "not an effort to suppress expression merely because public officials oppose the speaker's view." Perry, 460 U.S. at 46. The reasonableness of content-based restrictions must be assessed in light of the purposes of the forum. "[T]he military is, by necessity, a specialized society separate from civilian

11

society." Parker v. Levy, 417 U.S. 733, 743 (1974). It "need not encourage debate or tolerate protest to the extent that such tolerance is required of the civilian state by the First Amendment." Goldman, 475 U.S. at 507. Thus, military regulations are entitled to far greater deference than those designed for civilian society. Goldman, 475 U.S. at 507. Restrictions on speech that would run afoul of the First Amendment may, nevertheless, pass constitutional muster if promulgated by the military. Gen. Media, 131 F.3d at 282-83.

Notwithstanding the great deference owed to the military, regulations restricting speech on military installations may not discriminate against speech based upon its viewpoint. Cornelius, 473 U.S. at 806; Shopco, 885 F.2d at 174. Generally speaking, a regulation is viewpoint based if it suppresses the expression of one side of a particular debate. Lamb's Chapel v. Ctr. Moriches Union Free Sch., 508 U.S. 384, 393 (1993). Thus, regulations restricting an entire category of speech based upon its content may be permissible under the First Amendment. Berner v. Delahanty, 129 F.3d 20, 28 (1st Cir. 1997). However, regulations that "selectively grant[] safe passage to speech of which [officials] approve while curbing speech of which they disapprove" are impermissible, Berner, 129 F.3d at 28, even in the military, Bryant v. Gates, 532 F.3d 888, 897 (D.C. Cir. 2008); Shopco, 885 F.2d at 172. See also Cornelius, at 806

12

("[T]he government violates the First Amendment when it denies access to a speaker solely to suppress the point of view he espouses on an otherwise includible subject.").

Plaintiff argues that Camp Lejeune's regulation is unconstitutional because it is not only content based, but also unreasonable and viewpoint based. There is no serious dispute that the regulation in this case is content based but viewpoint neutral on its face. It prohibits certain categories of speech (i.e., extremist, indecent, sexist or racist), but without regard to any particular message or point of view. Consequently, the regulation does not violate the First Amendment's requirement that content-based restrictions be facially neutral as to viewpoint.

The regulation here, although viewpoint neutral on its face, has not been applied in a viewpoint-neutral manner. Plaintiff has been prohibited from displaying anti-Islamic messages, such as "Islam = Terrorism." Yet, testimony by defendants establishes that decals espousing pro-Islamic messages, such as "Islam is Love" or "Islam is Peace" would be permitted upon the Base. (Maida Dep. at 39 [DE #19-15].)

As applied, the regulation allows "one message while prohibiting the messages of those who can reasonably be expected to respond." Rosenberger v. Rector of Univ. of Va., 515 U.S. 819, 894 (1995) (Souter, J., dissenting). Such viewpoint

13

discrimination is the most egregious form of content discrimination and is impermissible regardless of the nature of the forum. Rosenberger, 515 U.S. at 829; Child Evangelism Fellowship of South Carolina, 470 F.3d 1062, 1067 n.2 (4th Cir. 2006).

Defendants argue that the regulation is reasonable and necessary because it is aimed at preventing speech the sole intention of which is to inflame the passions of those within the Base command. (Resp. Pl.'s Mot. Summ J. [DE #27] at 1.) However, defendants fail to recognize that pro Islamic messages, such as "Islam is Peace" and "Islam is Love" may be just as incendiary to individuals like plaintiff as anti-Islamic messages are to the individual who complained about plaintiff's decals.

Moreover, the fact that plaintiff's message may be extremely offensive to some is not a sufficient basis for banning plaintiff's decals. "If there is a bedrock principle underlying the First Amendment, it is that the Government may not prohibit the expression of an idea simply because society finds the idea itself offensive or disagreeable." Texas v. Johnson, 491 U.S. 397, 414 (1989) (burning of the American flag constitutes protected "speech"). While the military may have greater leeway in restricting offensive material in furtherance of securing order and discipline among its troops, it may not do

14

so in a manner that allows "one message while prohibiting the messages of those who can reasonably be expected to respond."

In this case, the regulation has been applied in a manner that discriminated against plaintiff's message based on plaintiff's point of view. Therefore, its enforcement cannot be sustained.[3]

## CONCLUSION

It is well settled that a commanding officer has broad discretion to exclude private persons and property from the area of his command. Cafeteria & Rest. Workers Union Local 473 v. McElroy, 367 U.S. 886, 893 (1961). The commanding officer may also restrict a wide range of expressive activity on base. See Spock, 424 U.S. 828 (holding that ban on partisan political activity is consistent with military objectives and does not contravene First Amendment). While military officials are entitled to great deference in restricting speech to further the military's needs, they may not do so in a manner that discriminates against a particular point of view. See Spock, 424 U.S. at 839 (concluding that policy was "objectively and evenhandedly applied").

Because defendants have applied Base Traffic Regulation BO 5560.2M, Chapter 2, ¶7 in a manner that discriminates against

---

[3] The court need not reach plaintiff's Equal Protection Claim or the alternative First Amendment arguments raised by plaintiff and therefore leaves those matters for another day.

15

plaintiff's message, they have violated his individual rights as protected by the Free Speech Clause of the First Amendment to the United States Constitution. Consequently, the court DENIES defendants' motion to dismiss or for summary judgment [DE #20] and GRANTS plaintiff's motion for summary judgment [DE #19]. Defendants, their employees, agents and successors in office, are hereby permanently ENJOINED from enforcing Base Traffic Regulation BO 5560.2M, Chapter 2, ¶7 in a manner that discriminates against speech based on the viewpoint expressed.

The clerk is DIRECTED to close this case.

This 31st day of March 2010.

*signature*
MALCOLM J. HOWARD
Senior United States District Judge

At Greenville, NC
#31